# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NICOLE DICKMAN, et al.       )
                                      )
            Plaintiffs,       )
                                      )
            v.              )       16 C 9448
                                        )
OFFICE OF THE STATE'S ATTORNEY  )
OF COOK COUNTY, et al.       )
                                        )
           Defendants.    )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court are three separate motions to dismiss. Plaintiffs Nicole Dickman, Matthew Dickman, Bella Dickman, and Aaliyah Dickman sue Defendants County of Cook, Office of the Cook County State's Attorney ("CCSAO"), Mary Stein, Michael Zhu, and Lauren Heller (collectively, "County Defendants"); Defendants Lurie Children's Hospital, Dr. Norell Rosado, Dr. Zena Leah Harris, Dr. Ranna A. Rozenfeld, Dr. Susan Woo, and Tierney Stutz (collectively, "Lurie Defendants"); and Defendant Gwendoline Adams. Plaintiffs allege various claims against the Defendants, including constitutional violations under 42 U.S.C. §§ 1983 and 1985 and state tort claims. The County Defendants, Lurie Defendants, and Adams each submitted separate motions to dismiss all claims against them. For the

following reasons, the Court grants all three motions and dismisses the Plaintiffs' Second Amended Complaint ("Complaint") in its entirety.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the Complaint. *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiffs Nicole Dickman and Matthew Dickman are parents to minor children Bella and Aaliyah Dickman. Nicole Dickman had another daughter, Hailey Yale ("Hailey"), from a previous relationship.

On April 16, 2015, Matthew Dickman was taking care of Hailey and Bella while Nicole Dickman was at work. Mr. Dickman was playing with Hailey when Bella, who was asleep in her bedroom, started to awaken. Mr. Dickman went into Bella's bedroom to feed her a bottle. While in Bella's bedroom, Mr. Dickman heard Hailey "gurgling" in the other room. He rushed to her and found her lying face up on the floor, unresponsive. Mr. Dickman began administering CPR and called 911 for assistance. He also texted Mrs. Dickman to alert her that Hailey had stopped breathing. Members of the Arlington Heights Rescue team arrived within ten minutes of Mr. Dickman's call.

Hailey was admitted to Lurie Children's Hospital ("Lurie") from Northwest Community Hospital. When Hailey was admitted at Lurie on April 16, she was alive

and responsive. Defendant Dr. Norell Rosado ("Dr. Rosado"), a medical doctor practicing in Child Abuse and Pediatrics at Lurie, examined Hailey upon admission. Dr. Rosado found no evidence of child abuse and offered no opinion as to whether Hailey suffered an abuse-related injury.

The same day, Defendant Gwendoline Adams ("Adams"), an investigator from the Child Protective Services, interviewed Mr. and Mrs. Dickman and spoke with Dr. Rosado. Mr. and Mrs. Dickman were also interviewed by Defendant Tierney Stutz ("Stutz") and Dr. Rosado, in the presence of a medical resident and a medical student. Mr. Dickman described the circumstances of Hailey's injury in full detail, and neither Mr. Dickman nor Mrs. Dickman gave any indication that they injured or suffocated Hailey. A medical team from Lurie also examined Bella for any signs of abuse or neglect, but concluded that Bella was healthy and uninjured.

On April 17, 2015, one day after her hospitalization at Lurie, Hailey passed away. Even though Dr. Rosado did not find any evidence of child abuse, he believed that it was most probable that Hailey's death was "non-accidental." Despite the lack of evidence that Mr. or Mrs. Dickman abused Hailey or Bella, Dr. Rosado and Stutz, along with Defendants Assistant State's Attorneys Mary Stein ("Stein") and Michael Zhu ("Zhu"), and Assistant Public Guardian Lauren Heller ("Heller"), initiated an action against Plaintiffs to remove Bella from their care.

Two days after Hailey's death, on April 19, 2015, the Cook County Medical Examiner performed an autopsy on Hailey's body. The medical examiner found no

evidence of trauma, abuse, or injury. On April 20, 2015, the Defendants[1] interviewed Detective Mandell of the Arlington Heights Police Department, who reported that there were no signs of trauma or abuse to Hailey. The Arlington Heights Police Department concluded that there was no credible evidence to pursue abuse charges against the Plaintiffs. Nonetheless, the Defendants continued with the removal proceedings.

The Complaint alleges that on April 21, 2015, the juvenile court held a hearing, during which Adams falsely testified that Mr. Dickman hit Hailey with pillows. Also alleged is that Dr. Rosado and Stutz falsely claimed that Mr. Dickman put a pillow over Hailey's face to calm her down, thereby suffocating her. The Complaint further alleges that, based on the Defendants' testimony, the Court found that probable cause existed to remove Bella, and proceedings were initiated to terminate Plaintiffs' parental rights.

Months later, on August 31, 2015, the Cook County Medical Examiner issued her official findings on Hailey's cause of death. The medical examiner found that Hailey died "as a result of complications of a congenital anomaly of the central nervous system, inclusive of a Chiari Type-I malformation" and stated that Hailey

---

[1] The Complaint states that "the Defendants interviewed Det. Mandell" but does not clarify which of the twelve defendants named in this action conducted the interview. Plaintiffs tend to make factual allegations against "the Defendants" and "all Defendants" throughout their Complaint, which makes it routinely difficult not only to understand the factual background, but also to ascertain whether the legal claims made against certain defendants pass muster under Rule 12(b)(6). *See Atkins v. Hasan*, 2015 WL 3862724, at *2 (N.D. Ill. 2015) ("Details about who did what are not merely nice-to-have features of an otherwise-valid complaint; to pass muster under Rule 8 of the Federal Rules of Civil Procedure, a claim to relief *must* include such particulars.").

died due to natural causes. Despite this conclusion, the Defendants carried on with their prosecution to remove Bella and terminate Plaintiffs' parental rights.

On February 7, 2016, Mrs. Dickman gave birth to Aaliyah. Aaliyah was born prematurely and stayed in the hospital until March. On March 4, 2016, Defendant Cook County took Aaliyah into custody. On March 8, 2016, the CCSAO falsely stated that Aaliyah was (1) neglected, (2) in a dangerous environment, (3) abused by her parent, and (4) in danger from her parents of death, disfigurement, impairment of emotional health, and loss of bodily function. The CCSAO further falsely stated that Mr. Dickman "wrestled hard core" with Hailey, that Hailey did not have a pre-existing medical condition, and that Mr. Dickman posed a risk of sexual molestation.

On April 16, 2016, almost a year after the initiation of the removal proceedings, the case was terminated in favor of Mr. and Mrs. Dickman. In all, Bella was removed from her parents' custody for 364 days. During the course of the removal proceedings, Defendants knew about the Arlington Heights Police Department's report concluding that there were no signs of abuse to Hailey, the medical records that showed no signs of abuse, and the Cook County Medical Examiner's report determining that Hailey's death was caused by a congenital defect.

On April 20, 2017, Plaintiffs filed their thirteen-count Second Amended Complaint against the Defendants. Count I alleges professional negligence against Lurie and Dr. Rosado. Counts II and III allege claims of intentional infliction of emotional distress and false light invasion of privacy, respectively, against All

Defendants. Counts IV and V allege defamation per se and defamation per quod, respectively, against all Individual Defendants. Count VI alleges malicious prosecution against Dr. Rosado, Stutz, Stein, Zhu, and Heller. Counts VII, VIII, IX, and X allege violations of the 4th Amendment protection against unreasonable search and seizure, violations of procedural and substantive due process, and a conspiracy to deprive Plaintiffs of the equal protection of the laws against the County Defendants, Dr. Rosado, and Stutz. Count XI is an indemnification claim against Cook County. Counts XII and XIII allege medical malpractice and wrongful death claims against Lurie and Drs. Rosado, Harris, Rozenfeld, and Woo.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the Complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is

and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's subject matter jurisdiction. Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction over its claims. *United Phosphorous Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc). The Court may consider matters outside of the Complaint in ruling on a motion to dismiss for lack of subject matter jurisdiction. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

## DISCUSSION

### I.  Defendant Adams

Adams seeks dismissal of all claims (Counts II–V) stated against her. Plaintiffs allege state law claims against Adams for intentional infliction of emotional distress, false light invasion of privacy, defamation per se, and defamation per quod. In her motion to dismiss, Adams raises several arguments as to why the claims should be dismissed, including that (1) the Court lacks jurisdiction because Plaintiffs allege only state law claims, and no federal claims, against her; (2) Plaintiffs did not demonstrate specific personal involvement on her part; (3) Counts III–V are time-barred as they

are brought after the one-year statute of limitations, and Plaintiffs failed to establish a claim against her regardless; (4) Plaintiffs cannot relitigate the juvenile court proceedings in federal court; and (5) she is protected by public official immunity and sovereign immunity.

Adams' motion to dismiss raises many arguments worthy of consideration, but the Court need not analyze them because Plaintiffs did not respond to Adams' motion. It is well-settled that "a person waives an argument by failing to make it before the district court." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). This rule applies where "a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss." *Id*. Plaintiffs originally had until August 10, 2017 to file a response to Adams' motion to dismiss. On August 10, Plaintiffs requested an extension of time to respond, which we granted. Plaintiffs' response was due on September 14, 2017. To date, Plaintiffs have not filed said response.

In her reply, Adams requests the Court to dismiss all claims against her due to Plaintiffs' failure to respond. Her request is granted. If a Court is given "plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." *Id*. Because Plaintiffs did not file a response, they waived any arguments against Adams' motion to dismiss. For these reasons, all claims against Adams are dismissed.

## II. County Defendants

The County Defendants seek dismissal of Plaintiffs' Complaint in its entirety. In their motion to dismiss under Rules 12(b)(6) and 12(b)(1), the County Defendants assert that (1) absolute, qualified, and sovereign immunities bar Plaintiffs' claims under 42 U.S.C. §§ 1983 and 1985 (Counts VII–X alleging 4th Amendment, procedural due process, substantive due process, and equal protection claims); (2) Plaintiffs fail to properly plead claims for Count II (intentional infliction of emotional distress), Count III (false light invasion of privacy), Count IV (defamation per se), Count V (defamation per quod), and Count VI (malicious prosecution); and (3) several state immunities bar Plaintiffs' claims.

### A. Plaintiffs' Motion to Strike County Defendants' Motion to Dismiss

As a preliminary matter, Plaintiffs move the Court to strike the County Defendants' motion to dismiss for failure to comply with Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to convert it and consider it as a motion for summary judgment. Plaintiffs take issue with the County Defendants' use of exhibits in their motion to dismiss. Plaintiffs contend that a 12(b)(6) motion must address the face of the Complaint, including any attached exhibits, and note that their Complaint did not contain any exhibits.

In considering a 12(b)(6) motion, the Court's review is limited to the pleadings in the Complaint and any attachments. *Limestone Dev. Corp. v. Vill. of Lemont*, 473 F. Supp. 2d 858, 867 (N.D. Ill. 2007). If the Court considers any matters outside the

pleadings, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Courts may, however, "take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion of summary judgment." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

"A court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773–774 (7th Cir. 2012). Attached to the County Defendants' motion are five juvenile court orders filed under seal. The sealed orders concern the underlying proceedings to remove Bella and Aaliyah from Plaintiffs' care. Court records are generally appropriate for judicial notice because they are sources "whose accuracy cannot reasonably be questioned." *Limestone*, 473 F. Supp. 2d at 868; *see also General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) ("The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records."); *Henson*, 29 F.3d at 284 (affirming that the district court properly took judicial notice of state court proceedings). Thus, the Court may take judicial notice of the exhibits attached to the County Defendants' motion to dismiss. Even so, we note that the majority of our reasoning stems directly from the parties' briefs and the face of the Complaint itself.

### B. Defendants Stein and Zhu: Absolute Prosecutorial Immunity

As a threshold matter, Plaintiffs argue that the Court should not consider the County Defendants' immunity defenses at this stage because such an analysis is fact-dependent, and to require Plaintiffs to anticipate and defeat immunity in their Complaint would create a heightened pleading standard than that required by Rule 8. Plaintiffs cite to a concurring opinion in *Jacobs v. City of Chicago*, where Judge Easterbrook stated that "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal." 215 F.3d 758, 775 (7th Cir. 2000). In the majority opinion, however, the Seventh Circuit noted the tension courts face in determining whether to dismiss a § 1983 suit under Rule 12(b)(6) based on immunity grounds:

> On one hand, courts have been admonished that qualified immunity is the ability to be free from suit, not merely a defense from liability, and that, therefore, the question of immunity should be decided at the earliest possible stage…On the other hand, the notice pleading requirements of Rule 8 do not require that a plaintiff anticipate the assertion of qualified immunity by the defendant and plead allegations that will defeat that immunity.

*Id*. at 765 n.3 (internal citations omitted). The Seventh Circuit acknowledged, however, that it "has held that resolution of this issue may be appropriate as early as dismissal under Rule 12(b)(6)." *Id*. Therefore, we find that the County Defendants' immunity defenses are ripe for consideration at this time.

We first consider, then, whether absolute prosecutorial immunity bars Plaintiffs' § 1983[2] claims against Assistant State's Attorneys Stein and Zhu. It is well settled that prosecutors who acted within the scope of their duties in initiating a criminal prosecution and presenting the State's case are immune from civil suits for damages under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Absolute immunity extends only to prosecutorial activities "intimately associated with the judicial phase of the criminal process." *Burns v. Reed*, 500 U.S. 478, 492 (1991). Therefore, courts take a "functional approach" in determining whether absolute prosecutorial immunity applies, considering "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Notably, absolute immunity shields prosecutors even if they act "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986).

The pertinent question is whether Stein and Zhu acted as "advocate[s] for the State" or whether their acts were "investigative and unrelated to the preparation and initiation of judicial proceedings." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (citing *Buckley*, 509 U.S. at 273). As Plaintiffs point out, if a prosecutor is performing investigative work and simply acting like a police officer, the prosecutor is not

---

[2] The County Defendants frame their absolute immunity defenses within the context of § 1983 claims. As courts have extended absolute immunity to defendants under similar statutes, including 42 U.S.C. § 1985, our immunity analysis applies to Plaintiffs' claims under § 1985 as well. *See Simonsen v. Board of Educ. of City of Chicago*, 2002 WL 230777, at *9 n.21 (N.D. Ill. 2002); *House v. Belford*, 1987 WL 16007, at *3 n.1 (N.D. Ill. 1987).

entitled to absolute immunity. *Buckley*, 509 U.S. at 262–63. Furthermore, the Supreme Court has held that a prosecutor cannot claim to be an advocate for absolute immunity purposes before probable cause has been established. *Id*. at 274.

In their Complaint, Plaintiffs allege that Stein and Zhu "conspired and combined" with other defendants to "report and falsely testify that Hailey had been suffocated by Matthew." They also allege that Stein and Zhu knew that the CCSAO reported false allegations that Mr. and Mrs. Dickman neglected and abused their newborn daughter, Aaliyah. The latter allegation against Stein and Zhu implicates their prosecutorial duties to represent the State in the proceedings to remove Aaliyah from Plaintiffs' care. As such, it fails to pierce absolute prosecutorial immunity. *Imbler*, 424 U.S. at 431. The first allegation fails as well, because it does not sufficiently allege Stein and Zhu's personal involvement in the fabrication of evidence, aside from the threadbare assertion that they "conspired" with other defendants to falsely testify. *See Whitlock v. Brueggemann*, 682 F.3d 567, 586 (7th Cir. 2012) (stating that "the plaintiff bears the burden of alleging in the complaint 'enough factual matter' to supply 'plausible grounds' to infer that absolute immunity has not yet attached [and] that the prosecutor knowingly fabricated evidence"). Such a vague allegation does not support an inference that Stein and Zhu were acting beyond the scope of their prosecutorial duties or that the alleged misconduct occurred while Stein and Zhu were acting in an investigative role before probable cause

existed.  For these reasons, absolute immunity bars Plaintiffs' federal claims against Stein and Zhu.

Because Plaintiffs' state law claims are based on the same factual allegations, Stein and Zhu are absolutely immune to the state law claims as well.  The federal and Illinois state doctrines of prosecutorial immunity are "coterminous and prosecutors acting within the scope of their prosecutorial duties are absolutely immune from liability under state law." *Frank v. Garnati*, 2013 IL App (5th) 120321, ¶ 17.  Citing to *Aboufariss v. City of De Kalb*, Plaintiffs contend that prosecutorial immunity is more restrictive in Illinois because public official immunity only shields prosecutors for actions taken without "malicious motives."  305 Ill. App. 3d 1054, 1064–65 (2d Dist. 1999).  But *Aboufariss* is distinguishable.  The prosecutor in *Aboufariss* did not argue that absolute prosecutorial immunity shielded her from the state claims.  Instead, she argued that the doctrine of public official immunity protected her, which does in fact include the "malicious motive" exception.  Contrary to Plaintiffs' position, Illinois state law closely tracks the federal doctrine of absolute prosecutorial immunity.  *Frank*, 2013 IL App (5th) 120321, ¶¶ 15–18.  Consequently, Stein and Zhu are also absolutely immune from Plaintiffs' state law claims.

### C. Defendant Heller: Absolute Immunity

Next, the County Defendants argue that Heller, who was appointed guardian ad litem in the underlying removal case, is also entitled to absolute immunity from

Plaintiffs' § 1983 claims. They cite to *Cooney v. Rossiter*,[3] a Seventh Circuit opinion

that discussed immunity for guardians ad litem:

> Guardians ad litem…are absolutely immune from liability for damages
> when they act at the court's direction. They are arms of the court, much
> like special masters, and deserve protection from harassment by
> disappointed litigants, just as judges do. Experts asked by the court to
> advise on what disposition will serve the best interests of a child in a
> custody proceeding need absolute immunity in order to be able to fulfill
> their obligations without the worry of intimidation and harassment from
> dissatisfied parents.

583 F.3d 967, 970 (7th Cir. 2009) (internal citations and quotations omitted). Due to

their quasi-judicial role in family proceedings, guardians ad litem are protected by

absolute immunity for any acts within the scope of their court-appointed duties. *Jones

v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006).

Plaintiffs completely disregard *Cooney* on the mistaken belief that it involved

an appeal from summary judgment, and not a motion to dismiss. They instead offer

*Kohl v. Murphy*, a Northern District case from 1991, which concluded that there were

insufficient facts at the motion to dismiss stage to establish whether the guardian ad

litem in that case had a quasi-judicial role and would therefore be absolutely immune.

767 F. Supp. 895, 901 (N.D. Ill. 1991). They also delve into a discussion regarding

whether Heller was a state actor or a direct adversary to the State, likening their

arguments to those in *Kohl*, which considered whether guardians ad litem should be

---

[3] In their Response to the County Defendants' motion to dismiss, Plaintiffs claim that two cases relied upon by County Defendants, *Cooney v. Rossiter*, 583 F.3d 967 (7th Cir. 2009), and *Schieb v. Grant*, 22 F.3d 149 (7th Cir. 1994), are inapplicable because they were decided at summary judgment and not pursuant to Rule 12(b)(6). While accurate with respect to *Schieb*, Plaintiffs are mistaken regarding *Cooney*. The Seventh Circuit considered *Cooney* on direct appeal from the district court's granting of a motion to dismiss. Therefore, we find *Cooney* applicable and, in fact, persuasive on the issue of absolute immunity for guardians ad litem.

treated similarly to public defenders, who are not deemed to be acting on behalf of the State and thus not entitled to absolute immunity. *Id*. at 899–900.

These arguments are irrelevant. The Seventh Circuit unequivocally stated in its 2009 *Cooney* opinion that guardians ad litem are entitled to absolute immunity. *Cooney*, 538 F.3d at 970. We are not bound to follow a Northern District opinion from 1991 that conflicts with a subsequent (and controlling) Seventh Circuit case. Moreover, *Cooney* has since been acknowledged by courts both within and outside of the Seventh Circuit. *See, e.g., Golden v. Helen Sigman & Assocs., Ltd.*, 611 F.3d 356, 361 (7th Cir. 2010); *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust*, 744 F.3d 623, 630 (10th Cir. 2014); *Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 370 (D.P.R. 2015). Relevant to this matter, Illinois courts have also acknowledged and applied *Cooney* in considering whether child representatives are absolutely immune to lawsuits. *See, e.g., Vlastelica v. Brend*, 2011 IL App (1st) 102587, at ¶¶ 21–23 (noting that *Cooney* held that guardians ad litem and child representatives are entitled to the same absolute immunity because they are "arms of the court," finding *Cooney*'s logic persuasive, and holding that child representatives, like guardians ad litem, are entitled to absolute immunity).

*Cooney* held that the court-appointed child's representative and psychiatrist were both absolutely immune to the charges against them. The plaintiff in *Cooney*, like Plaintiffs here, alleged that the defendants were part of an illegal conspiracy to deprive her of the custody of her children. The court concluded that the acts

complained of, including that the psychiatrist submitted a false report that the child suffered from Munchausen syndrome, "all occurred within the course of their court-appointed duties." *Cooney*, 538 F.3d at 970. Plaintiffs' main allegations against Heller include that she conspired with other defendants to report and falsely testify that Mr. Dickman suffocated Hailey with a pillow and that she had knowledge that false information was delivered to the juvenile court by the CCSAO. The alleged misconduct, however, occurred during the course of Heller's court-appointed duties as guardian ad litem. Plaintiffs have not alleged that Heller committed any wrongdoing outside the course of her duties. Therefore, Heller is shielded by absolute immunity and all claims against her are dismissed.

### D. Defendant CCSAO: Sovereign Immunity

The County Defendants argue that Eleventh Amendment sovereign immunity prevents the Court from exercising jurisdiction over Plaintiffs' claims. Having already found that Stein, Zhu, and Heller are absolutely immune to Plaintiffs' claims, we turn our attention to CCSAO. The Eleventh Amendment "bars an action in federal court against a state, its agencies, or its officials in their official capacity." *Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir. 1997) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–102 (1984)). The CCSAO is a state agency and is consequently immune from suit in federal court under the Eleventh Amendment. *Watson v. Bush*, 2010 WL 1582228, at *3 (N.D. Ill. 2010) (citing *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 265 (7th Cir. 1999)). Therefore,

Plaintiffs' federal claims against CCSAO are dismissed for lack of subject matter jurisdiction.

Additionally, the Illinois Court of Claims has exclusive jurisdiction over all state tort claims against the State of Illinois. 705 ILCS 505/8(d); *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). This rule extends to state agents as well. *See White v. City of Chicago*, 369 Ill. App. 3d 765, 779 (1st Dist. 2007) (holding that State's Attorneys are state employees). Because the CCSAO is a state agent, the Court of Claims has exclusive jurisdiction over Plaintiffs' tort claims against it, and those claims are also dismissed.

### E. Defendant Cook County: Indemnification

The final County Defendant to consider is Cook County. Plaintiffs' main claim against Cook County is that of indemnification. The County Defendants argue that, because all of Plaintiffs' claims should be dismissed, the indemnification claim against Cook County must also be dismissed. We agree. As Plaintiffs noted, Cook County is directed to pay any judgment for compensatory damages for which it or an employee acting within the scope of his employment is liable. But as argued by the County Defendants and found by the Court, the individual employees are immune to Plaintiffs' claims. Cook County therefore has nothing to indemnify.

Plaintiffs also included Cook County in many of their other claims (Counts II–III, and VII–X) by way of naming "All Defendants." Plaintiffs' Complaint, however, does not lodge any allegations specifically against Cook County other than the

indemnification claim. Complaints must include specific allegations against specific defendants so that they are put on notice of the allegations against them. *See Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("The Rules of Civil Procedure set up a system of notice pleading. Each defendant is entitled to know what he or she did that is asserted to be wrongful."). Furthermore, § 1983 claims against municipalities must allege that the municipality had a "policy or custom…[that] inflict[ed] the injury…[and was] the moving force of the constitutional violation" Plaintiffs suffered. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Plaintiffs' Complaint alleges nothing of the sort against Cook County. In fact, the Complaint does not contain any specific factual allegations against Cook County whatsoever. Perhaps, then, Cook County was included in the Complaint under the theory of *respondeat superior*. In that case, as discussed above, we have found that the County Defendants are immune to Plaintiffs' claims and therefore there is no need to consider *respondeat superior*. Without a specific allegation against Cook County other than the indemnification claim, we dismiss all claims against Cook County.

*    *    *

For the aforementioned reasons, all County Defendants are dismissed from this action. Count XI, seeking indemnification from Defendant Cook County, is entirely dismissed.

### III.  Lurie Defendants

The Lurie Defendants, likewise, move the Court to dismiss all of Plaintiffs' claims against them.  They argue that (1) Plaintiffs failed to state any facially plausible claims for Counts II–X (state tort claims and federal claims under §§ 1983 and 1985), (2) the Lurie Defendants are protected from Counts II–X by witness, judicial, and statutory immunities, and (3) Plaintiffs failed to comply with the affidavit requirement of 735 ILCS 5/2-622 and therefore Counts I, XII, and XIII (professional negligence, medical malpractice, and wrongful death) should be dismissed.  We consider the Lurie Defendants' arguments in the order that they are presented in their motion to dismiss.

#### A. Defendants Dr. Rosado and Stutz: Not State Actors

First, the Lurie Defendants contend that Plaintiffs have not sufficiently alleged that Dr. Rosado and Stutz are state actors to whom liability extends under § 1983.  To establish a claim under § 1983, Plaintiffs must show that (1) some person deprived them of a federal right, and (2) that such person acted under color of state law.  *Gomez v. Toledo*, 446 U.S. 625, 640 (1980).  Neither Dr. Rosado nor Stutz is employed by the state.  They both work for Lurie—Dr. Rosado as a physician and Stutz as a social worker.  Plaintiffs allege, however, that "[t]he Defendants are government agent [sic] and actors or persons acting in concert with those government agents and actors."  The question, then, is whether Plaintiffs sufficiently allege that Dr. Rosado and Stutz are state actors via their relationship with state defendants.

Plaintiffs first insist that the determination of whether a private person is a state actor is "necessarily a fact-bound inquiry." *See Brentwood Academy v. Tenn. Secondary School Athletic Ass'n, et al.,* 531 U.S. 288, 298 (2001). They maintain that considering this question would be "premature at this stage." We disagree. The pleading requirements of Rule 8 require Plaintiffs to provide detailed factual allegations to support a plausible inference that they are entitled to relief. In this case, they must allege sufficient details to support the inference that Dr. Rosado and Stutz acted "under color of state law" to be treated as state actors under § 1983.

A private person is deemed to act "under color of state law" for § 1983 purposes when he willfully participates in joint action with the State or its agents. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). Dr. Rosado and Stutz must have "had a meeting of the minds and thus reached an understanding" with state actors to deprive the Plaintiffs of a constitutional right. *Wilson v. Warren Cnty., Ill.*, 830 F.3d 464, 468 (7th Cir. 2016). Furthermore, Plaintiffs must allege "a concerted effort between" the Lurie Defendants and state actors to deprive Plaintiffs of their rights. *Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000); *see also Cunningham v. Southlake Center for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991) ("A requirement of the joint action charge…is that both public and private actors share a common, unconstitutional goal.").

Here, Plaintiffs allege that Defendants Dr. Rosado and Stutz "conspired and combined" with state actors to report and falsely testify that Hailey had been

suffocated by Matthew. They also allege that the Defendants "conspired and combined to remove Bella from the Plaintiffs' home and from their care." These conclusory statements, alone, do not support an inference that Dr. Rosado and Stutz had a "meeting of the minds" with state actors and that they decided, jointly, to come together for the goal of depriving Plaintiffs' constitutional rights. *See Fries v. Helper*, 146 F.3d 452, 458 (7th Cir. 1998) (concluding that "mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss"). Just as Plaintiffs' threadbare assertion of this alleged conspiracy was insufficient to pierce absolute prosecutorial immunity for Defendants Stein and Zhu, it is likewise too sparse to demonstrate that Dr. Rosado and Stutz acted under color of state law.

Plaintiffs also cite to a Seventh Circuit case which identified four circumstances where courts will find state action: (1) where there is a symbiotic relationship between the private actor and the state; (2) where the state commands or encourages the private discriminatory action; (3) where a private party carries on a traditional public function; and (4) where the involvement of governmental authority aggravates or contributes to the unlawful conduct. *Airline Pilots Ass'n, Intern. v. Dept. of Aviation of City of Chicago*, 45 F.3d 1144, 1149 (7th Cir. 1995). But Plaintiffs did not provide any reason to infer that the fact pattern before us falls into one of these categories. Plaintiffs claim that there is a close nexus between Dr. Rosado, Stutz, and Adams (the Child Protective Services investigator who we

dismissed earlier in this opinion) because they are "engaged in a symbiotic relationship, and all three conspired and combined to remove Bella from the home," but the facts in the Complaint do not support such inferences.

Plaintiffs' Complaint does not sufficiently plead that Dr. Rosado and Stutz are state actors or acted "under color of state law."  For the foregoing reasons, Plaintiffs' § 1983 claims against Dr. Rosado and Stutz, and therefore Counts VI–IX, are fully dismissed.

### B.  Count X: § 1985 Conspiracy Claim

The Lurie Defendants next contend that Plaintiffs have not plausibly alleged a conspiracy under § 1985.  A § 1985(3) claim requires (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury or a deprivation of a right or privilege granted to U.S. citizens.  *Xiong v. Wagner*, 700 F.3d 282, 297 (7th Cir. 2012).  In response to the Lurie Defendants' motion to dismiss, Plaintiffs cite to *Quinones v. Szorc*, a Seventh Circuit case which held that a complaint alleging conspiracy under § 1985 "must simply plead sufficient facts from which a conspiracy can be inferred; the facts detailing the conspiratorial agreement can be pleaded generally, while those facts documenting the overt acts must be pleaded specifically."  771 F.2d 289, 291 (7th Cir. 1985).  Plaintiffs contend that they sufficiently pled specific overt acts, including that Defendants removed Bella and Aaliyah from their custody and care and kept the girls despite receiving information

that there was no abuse or neglect. The Plaintiffs do not, however, adequately allege a conspiratorial agreement between the Defendants to deprive the Plaintiffs of their children, which is essential to their § 1985 conspiracy claim.

Plaintiffs rely on *Quinones* for support, but it is distinguishable. While the Seventh Circuit, in finding that the plaintiff sufficiently pled the conspiracy despite being unable to specify the time and place of the conspiracy's formation, noted that the very nature of a conspiracy obscures information about the alleged conspirators' agreement, Quinones alleged more facts to support such an inference than Plaintiffs do in this case. Quinones alleged that the defendants met and agreed to assault, batter, and intimidate him to stop campaigning for the election of Harold Washington. *Id.* at 290. Plaintiffs have not alleged any facts that Dr. Rosado and Stutz met with the other defendants and agreed to deprive Plaintiffs, other than the conclusory statement that they "conspired and combined" together. *See Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981) (finding that "conclusory allegations" that defendants conspired together with the intent to deprive plaintiff of equal protection of the laws were "wholly devoid of facts upon which a claim for relief can be based"). "[M]ere conjecture that there has been a conspiracy is not enough." *Id.* The Plaintiffs did not sufficiently plead the existence of a conspiracy. Count X is dismissed.

## C. Plaintiffs' State Law Claims

Having dismissed all federal claims in Plaintiffs' Complaint, all that remains are Plaintiffs' state law claims (Counts I–VI and Counts XII–XIII).[4]  Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction over claims that are sufficiently related to the claims upon which the court's original jurisdiction is based. A district court "may decline to exercise supplemental jurisdiction over pendent state-law claims if the court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1250–1251 (7th Cir. 1994).  And courts in the Seventh Circuit follow this general rule: "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits."  *Id.*  Accordingly, having dismissed all of Plaintiffs' federal claims, we decline to exercise jurisdiction over the remaining state law claims as to the Lurie Defendants.  Plaintiffs' state law claims are dismissed without prejudice.

## CONCLUSION

For the aforementioned reasons, the Court grants all three motions to dismiss and dismisses the Plaintiffs' Complaint in its entirety.  All claims are dismissed without prejudice.  It is so ordered.

---

[4] Plaintiffs have already agreed to dismiss Drs. Woo, Rosenfeld, and Harris from Counts II–V of their Complaint in response to the Lurie Defendants' argument that these defendants were not involved in the underlying proceedings to remove Bella and Aaliyah from Plaintiffs' care.

Dated:3/16/2018

Charles P. Kocoras
United States District Judge